**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 21-157 |
| JAMES IRA IRVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Presently before the Court is the Government's motion pursuant to 18 U.S.C. § 3145(a)(1) seeking revocation of a release order issued by United States Magistrate Judge Lisa Pupo Lenihan, which is opposed by Defendant James Ira Irvin.  (*See* Docket Nos. 36, 46, 47, 51, 52).  After careful consideration of the parties' positions, review of the detention hearing transcript, the referenced Pretrial Services Report, evidence received at the detention hearing held  before Judge Lenihan on October 20, 2021, and included again here with Defendant's Response (Docket Nos. 42; 47-1 – 47-9), the Government's motion will be granted and detention will be ordered.  The following includes the Court's findings of fact and statement of the reasons for detention as required by 18 U.S.C. § 3142(i)(1).

## I.  **<u>BACKGROUND</u>**

### A.  **<u>PROCEDURAL HISTORY</u>**

On April 13, 2021, Defendant was charged in a three-count Indictment as follows: possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and possession of a firearm and

ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Three), all for conduct occurring on or about June 21, 2020.  (Docket No. 3).

An arrest warrant was issued for Defendant, and he made an initial appearance on April 16, 2021.  (Docket Nos. 7, 10).  Defendant was arraigned and pled not guilty to the charges on April 23, 2021, and he waived a detention hearing at that time.  (Docket Nos. 20, 21, 24, 25).

On October 5, 2021, Defendant filed a motion for a detention hearing, and Judge Lenihan conducted a hearing on October 20, 2021.  (Docket Nos. 33, 38, 42).  Judge Lenihan found that Defendant is not a flight risk.  (Docket No. 42 at 36).  She further found that Defendant is a danger to the community, but determined that conditions of release could be fashioned to reasonably assure the safety of the community.  (*Id.* at 36-37).  Accordingly, Judge Lenihan entered an order releasing Defendant on a $10,000 unsecured appearance bond with conditions, including that he reside at the Allegheny County Treatment Alternative ("ACTA") facility.  (Docket Nos. 39, 40).  However, Judge Lenihan stayed the release order until 5:00 p.m. on October 20th to permit the Government to determine whether it would appeal the order of release.  (Docket Nos. 38, 40).

On that same date, the Government filed with this Court a motion to continue the stay and revoke the release order pursuant to 18 U.S.C. § 3145(a)(1).  (Docket No. 36).  In sum, the Government submits that the release ruling is contrary to law and to the evidence of record, and it should be reversed.  (*Id.* at 1).  The Court granted the Government's motion as to its request to continue the stay of the release order, and ordered that Defendant shall remain in the custody of the United States Marshals Service pending further proceedings on the Government's request that he be detained pending trial or other disposition.  (Docket No. 41).  The Court further ordered the Government to obtain a copy of the hearing transcript for filing on the record and also ordered

briefing by the parties on the Government's motion, which has now been filed.  (Docket Nos. 46, 47, 51, 52).

To that end, the Government argues that the rebuttable presumption of pretrial detention applies and the relevant factors in 18 U.S.C. § 3142(g) mandate detention.  (Docket No. 46 at 8-9, 12-15).  According to the Government, the nature and circumstances of the offenses are very serious, as Defendant is facing a mandatory minimum term of imprisonment for the drug charge and the § 924(c) charge, and he likely will be deemed a career offender and armed career criminal under the advisory Sentencing Guidelines.  (*Id.* at 13).  Additionally, the Government submits that the weight of the evidence against Defendant is strong because he possessed almost $10,000 when police pulled him over with drugs and a loaded firearm, which suggests he was engaged in drug trafficking.  (*Id.* at 13-14).  Further, the Government argues that Defendant's history and characteristics heavily weigh in favor of detention given his history of re-arrest while on release, past behavior involving fleeing/failing to appear and extensive criminal history.  (*Id.* at 5, 14-15).  Finally, the Government maintains that Defendant poses a serious danger to the ACTA residents and community at large if released because he has been involved in drug-trafficking activities since age 19, and his criminal pattern only continued despite past treatment.  (*Id.* at 15).  Overall, the Government contends that Defendant is a danger to the community given the serious nature of the charged offenses and his history and characteristics, and he is a flight risk because he now faces a substantial period of incarceration if convicted.  (*Id.* at 5).

In response to the Government's motion, Defendant advocates that this Court should uphold the release order and permit Defendant to return to ACTA, an inpatient drug program that provides mental health treatment and vocational training, where he previously was permitted to resided by virtue of his detainer at Allegheny County Case No. 6934-2018, lodged following his

arrest in this case. (Docket No. 47 at 1). Initially, Defendant contends that he produced evidence sufficient to rebut the presumption of detention in this case. (*Id.* at 15). On that point, Defendant submitted information relative to his plan for release to ACTA, where he would stay for anywhere between six months to one year, with further housing to be approved by Pretrial Services. (*Id.*). While at ACTA, Defendant would receive mental health and substance abuse treatment. (*Id.*). Additionally, Defendant presented character letters from family members, and he provided a letter from a former employer describing Defendant's good work ethic and indicating that he would be pleased to see him return to work. (*Id.* at 15-16). Further, despite his serious prior convictions, he does not have evidence of prior violence and no prior gun charges, prior judges recognized his need for treatment, even when he was convicted of a drug distribution offense, and the drug court coordinator explained that he was compliant with the program's rules between November 2018 and June 2020. (*Id.* at 16). Finally, Defendant submits that he is a lifelong resident of Western Pennsylvania. (*Id.*).

Regardless of the presumption, however, Defendant advocates that the release order should not be revoked because the Government has not proven that there are no conditions that will reasonably assure the community's safety and his appearance as required. (Docket No. 47 at 17). Instead, there are such conditions, as specified in the release order, including a restriction to living at ACTA until another residence is approved by Pretrial Services following graduation from the program, drug testing, mental health therapy and substance abuse therapy, as specified in the release order. (*Id.* at 17-18). Defendant also provides statistics generally demonstrating "that nearly everyone on pretrial release in the federal system appears in court and does not reoffend." (*Id.* at 21-23).

4

B. **EVIDENCE ADDUCED AT THE DETENTION HEARING**

At the October 20th hearing, the Government presented testimony by Special Agent ("SA") Ryan O'Sullivan of the Bureau of Alcohol, Tobacco, Firearms and Explosives. (Docket No. 42 at 6). SA O'Sullivan testified that Defendant was arrested on June 21, 2020, following a traffic stop of a vehicle registered to him which was conducted by the Brentwood Borough Police. (*Id.* at 6-7). During the traffic stop, an officer recovered from the center console void area of the vehicle approximately 150 grams of methamphetamine and a firearm loaded with eight rounds of ammunition. (*Id.* at 7). An additional magazine loaded with 12 rounds and $9,134 in United States currency also were recovered from the vehicle. (*Id.*). According to SA O'Sullivan's testimony, Defendant allegedly took responsibility for these items, stating, "[a]nything you find in there is mine, and he ain't got nothing to do with anything," referring to the passenger in the vehicle, who denied ownership of the items. (*Id* at 8.). In addition to describing the circumstances leading to Defendant's arrest, SA O'Sullivan testified that his criminal history includes four felony possession with intent to distribute convictions, one third-degree felony fleeing or attempting to elude an officer conviction, and one third-degree felony robbery conviction. (*Id.* at 8, 10-11).

Defendant presented documentary evidence at the hearing consisting of a description of the ACTA program, including an explanation of its phases, as well as testimony from a prior hearing in July 2020 explaining the details of the program. (Docket Nos. 47-1; 47-2). In summary, ACTA is "a non-hospital residential drug and alcohol, long term treatment program." (Docket No. 47-8). According to a letter from Kevin L. Kordzi, ACTA's director of residential services, Defendant was admitted to the program in January 2021 under an alternative sentence from the

Court of Common Pleas of Allegheny County, Pennsylvania[1] until he was removed from the program on April 16, 2021, when he was arrested on these charges.  (*Id.*).  Mr. Kordzi wrote that Defendant was cooperative and made progress while in the program, and ACTA "would be willing to assess [him] for re-involvement in the program."  (*Id.*).

Defendant also supplied character letters of support from his mother, Nicole Craig, and his sisters, LaTeisha Irvin and LaChel Minniefield, describing his difficult upbringing, the challenges he has faced and attesting that he is a good person and a good father to his daughter.  (Docket Nos. 47-3; 47-5; 47-7).  Additionally, he provided a letter from DeWitt Walton, explaining that he completed the Breaking the Chains of Poverty Building and Construction Trades, Manufacturing, and Emerging Energy Sector Program in 2019.  (Docket No. 47-4 at 1).  As a result, Defendant was referred to and hired by TMS International, but he eventually was laid off due to the COVID-19 pandemic.  (*Id.* at 1-2).  Mr. Walton indicated that there was a possibility Defendant could return to his former job if he were to be released, but he could not guarantee it.  (*Id.* at 2).

Following receipt of the foregoing evidence at the hearing, Judge Lenihan noted that the Government is entitled to a rebuttable presumption that detention is needed based on the drug trafficking offense Defendant faces, and that he offered a release plan to rebut the applicable presumption.  (Docket No. 42 at 34-35).  Judge Lenihan did not explicitly find that Defendant rebutted the presumption; however, after considering the four factors required to be considered

---

1       Defendant provided an email from Karen Ollis-Duffola, the Drug Court Coordinator for Allegheny County Adult Probation, explaining how he arrived at ACTA.  Ms. Ollis-Duffola explained that Defendant "pled into the drug court program" on November 26, 2018 for a charge of possession with intent to deliver.  (Docket No. 47-6 at 1).  He was "sentenced to the standard 36 month Drug Court Sentence which began with inpatient treatment at Greenbriar in Washington County," subsequently was placed on electronic monitoring after completing that program, and reported monthly to court for review hearings until June 21, 2020, when he was arrested and detained on then-pending state charges (which were later adopted for federal prosecution).  (*Id.*).  Defendant was detained at the Allegheny County Jail from June 2020 until he was transferred to the ACTA program in January 2021.  He remained at ACTA until he was arrested on April 19, 2021 on the charges in this case, at which time he was returned to the ACJ.  (*Id.*).

under the Bail Reform Act,[2] Judge Lenihan ultimately found that Defendant is not a flight risk, but he is a danger to the community. (*Id.* at 36-37). Nonetheless, Judge Lenihan determined that there are conditions that can be imposed which will reasonably assure the safety of the community including placement in the ACTA program. (*Id.* at 37). Consequently, Judge Lenihan entered an order releasing Defendant on a $10,000 unsecured appearance bond with conditions. (*Id.* at 38; Docket Nos. 39, 40). The Government's appeal of the release order followed.

After reviewing the transcript of the detention hearing before Judge Lenihan along with the evidence introduced at the hearing, and considering the Pretrial Services Report and the arguments advanced by the parties in their briefing, the Court concludes that there is no condition or combination of conditions which will reasonably assure Defendant's appearance as required and the safety of the community if he is released.

## II.   **LEGAL STANDARD**

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings. Pursuant to 18 U.S.C. § 3145(a)(1), "[i]f a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release. . . ." A district court exercises

---

2       As to those factors, Judge Lenihan commented that the charged offenses are serious and Defendant is facing a lengthy sentence if convicted; the weight of the evidence is moderate and includes his admission, which weighs against him; he has family ties to the community and some past employment, which weighs in his favor; and his criminal history is a problem for him given that he has been charged with new offenses while on bond or probation seven times and he has a pattern of similar criminal activity involving drug dealing. (Docket No. 42 at 35-36). Judge Lenihan further commented that Defendant has addiction problems and it seems to her that he needs treatment, not incarceration. (*Id.* at 36).

*de novo* review over a release order entered by a magistrate judge.[3]  *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  A district court may incorporate the transcript of the proceedings before the magistrate judge, and the Court does so here.  *See United States v. Chagra,* 850 F. Supp. 354, 357 (W.D. Pa. 1994).

As noted, the availability of pretrial release is controlled by the BRA, which provides that a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered.  18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the judicial officer must consider the § 3142(g) factors concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--

---

3       It is well-established that "[d]e novo review does not require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing."  *United States v. Kolonis*, No. 2:20-cr-0146, 2020 WL 5253192, at *3 (W.D. Pa. Sept. 3, 2020) (quoting *United States v. Burgess*, No. 2:09-cr-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009)); *see also United States v. Bastianelli*, Crim. No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) ("The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record.").  The Court finds that the record is fully developed and an additional hearing is not required in this instance.  The parties also agree that the matter should be decided utilizing the transcript of the hearing before Judge Lenihan.  (*See* Docket Nos. 46 at 8; 47 at 4, 27).

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies to cases, among others, in which there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq*., for which the maximum term of imprisonment is ten years or more, or an offense under 18 U.S.C. § 924(c). *See* 18 U.S.C. §§ 3142(e)(3)(A), (B). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

A defendant may rebut the presumption in § 3142(e) by producing "some credible evidence . . . that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light and has been construed as easy to meet.[4] *Chagra*, 850 F. Supp. at 357 (citation omitted). If rebutted, however, the presumption does not disappear but rather "remains in the case as an evidentiary

_____

[4]      To rebut the presumption that the defendant presents a danger to the community, "he must come forward

finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* at 358 (citation omitted).  If the defendant rebuts the presumption, the burden of persuasion remains with the Government. *Id.* at 357.  Thus, the Government bears the burden of proving that the defendant presents either a risk of flight or a danger to the community.[5]

## III.   <u>DISCUSSION</u>

As an initial matter, Defendant is charged in Count One of the Indictment with possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, which carries a penalty of not less than five years and up to 40 years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B)(viii).  He is also charged in Count Two with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  These charges raise the rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community. *See* 18 U.S.C. §§ 3142(e)(3)(A), (B).  Defendant does not dispute that the rebuttable presumption applies in this case.  (*See* Docket No. 42 at 22).

Defendant contends that he has rebutted the presumption by proffering evidence of the following: information concerning ACTA, where he requests to reside and participate in its program (which includes substance abuse and mental health treatment) for anywhere between 6 months to one year, with further housing to be approved by Pretrial Services; letters from three

---

with some credible evidence that he will not continue to engage in the drug activities with which he has been charged." *Chagra*, 850 F. Supp. at 358 (citations omitted).  This may be accomplished through "'testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation.'" *Suppa*, 799 F.2d at 120 (quoting *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)).

5       The Government must prove by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).  The Government must prove by clear and convincing evidence that the defendant is a danger to the safety of any other person or the community. *Delker*, 757 F.2d at 1399.

family members attesting to challenges Defendant faced as a child, prior substance abuse, and his recent efforts to overcome his challenges; a letter from a representative of an organization which helped Defendant obtain employment in the past and offering to help him obtain employment if he is released; information from the Allegheny County drug court coordinator explaining that Defendant was in compliance with the program's rules between November 2018 and June 2020; and he is a lifelong resident of Western Pennsylvania.  (Docket No. 47 at 15-16).

Even accepting that Defendant's proffered information and evidence satisfies his burden to rebut the applicable presumption, the Court nonetheless concludes that the Government has presented clear and convincing evidence that Defendant is a danger to the safety of the community and has proven by a preponderance of the evidence that he is a flight risk.  In reaching these decisions, the Court has conducted an independent examination of the record as a whole and balanced the four factors set forth in 18 U.S.C. § 3142(g).  For reasons that follow, the Court finds that the available information and evidence on each of those factors weigh in favor of detention.

## A.   Nature and Circumstances of the Offenses Charged

As discussed, this case arises from a traffic stop of a vehicle registered to Defendant which was conducted by the Brentwood Borough Police.  (Docket No. 42 at 6-7).  During the traffic stop, an officer recovered from the center console void area of the vehicle approximately 150 grams of methamphetamine and a firearm loaded with eight rounds of ammunition.  (*Id.* at 7).  An additional magazine loaded with 12 rounds and $9,134 in United States currency also were recovered from the vehicle.  (*Id.*).  Defendant allegedly took responsibility for these items.  (*Id.* at 8).

Defendant's alleged conduct involves the dangerous intersection of drug trafficking and gun possession, resulting in the very serious controlled substance and firearms charges he faces in this case: possession with intent to distribute 50 grams or more of a mixture and substance

containing a detectable amount of methamphetamine (Count One); possession of a firearm in furtherance of a drug trafficking crime (Count Two); and possession of a firearm and ammunition by a convicted felon (Count Three).  (Docket No. 3).  If convicted, he faces a statutory mandatory term of not less than five years and up to 40 years' imprisonment at Count One, a term of five years' imprisonment at Count Two, which must be imposed to run consecutively to any other term of imprisonment; and not less than 15 years and up to life imprisonment at Count Three if he has certain qualifying prior convictions.[6]  *See* 21 U.S.C. § 841(b)(1)(B)(viii); 18 U.S.C. §§ 924(c)(1)(A)(i), 924(e)(1).  Given all of this, the nature and circumstances of the offenses charged weigh strongly in favor of pretrial detention.

## B.  Weight of the Evidence

Initially, while Defendant is presumed innocent of the charged offenses, the Court observes that the weight of the evidence is at least moderate, as noted by Judge Lenihan (Docket No. 42 at 35), and leans toward strong in this Court's estimation.  As a general matter, the grand jury's return of the Indictment establishes probable cause that the offenses occurred, and thus demonstrates that the weight of the evidence against Defendant is relatively strong.  More specifically, however, testimony at the detention hearing indicates that Defendant allegedly took responsibility for the methamphetamine, firearm, ammunition and cash found in the vehicle, stating, "[a]nything you find in there is mine, and he ain't got nothing to do with anything," referring to the passenger in the vehicle, who denied ownership of the items.  (*Id.* at 8).  This Court agrees with Judge Lenihan that Defendant's alleged admission "certainly weighs against him."  (*Id.* at 35).  In sum, while

---

6       Defendant criticizes the Government for pointing out the potential penalties Defendant faces if convicted of the charged offenses, and notes that potential penalties are not one of the § 3142(g) factors for the Court to consider. (Docket No. 47 at 20).  While it is true that the potential penalties a defendant faces is not a factor enumerated in § 3142(g), it stands to reason that such penalties correlate to the nature of the charged offenses, which is a factor the Court must consider under the statute, and further reflect the offenses' corresponding seriousness.

recognizing that Defendant is presumed innocent of the charged offenses, the weight of the evidence against him favors pretrial detention.

### C.   **History and Characteristics of Defendant**

As to Defendant's background and characteristics, he was born and raised in Pittsburgh, Pennsylvania, and he is now 35 years' old.[7]  Defendant's mother and six of his seven siblings live in the Pittsburgh area, and his father is deceased.  Defendant is not married, but he has a 15-year old daughter from a prior relationship.  Defendant's daughter resided with him prior to his arrest, but she now resides with her mother.  As to community ties, Defendant has lived in the Pittsburgh area his entire life.

As noted, Defendant submitted character letters of support from several family members. His sister, Ms. Irvin, explained that they grew up in the projects of St. Clair Village where they witnessed their mother struggle with drug addiction.  (Docket No. 47-3 at 1).  Defendant was in the custody of his maternal grandmother at that time, who disciplined him in a manner that would be considered abusive.  (*Id.*).  Defendant was eventually taken in by a maternal aunt who also abused drugs.  (*Id.*).  Ultimately, Defendant and his sister became wards of the state and were placed in various foster homes.  (*Id.*).  Despite all of these challenges, Ms. Irvin states that Defendant has worked to turn his life around, he is a good father, and a good person.  (*Id.*). Defendant's mother, Ms. Craig, and his other sister, Ms. Minniefield, echo these sentiments. (Docket Nos. 47-5; 47-7).  Based on this information, the Court recognizes that Defendant has a loving family who supports him.

---

7       Defendant's background, residence, family ties, employment history, physical and mental health, substance abuse history and criminal history are described in the Pretrial Services Report prepared by the United States Pretrial Services Office.  The Court notes that neither party has objected to the contents of this Report relative to Defendant's history and characteristics as detailed therein.

As for his health, Defendant previously suffered from blood clots in his lungs and experienced migraine headaches and elevated blood pressure. He also has been diagnosed with depression, anxiety and post-traumatic stress disorder, for which he is prescribed several medications. Defendant has a history of substance abuse involving daily heroin use from 2008 until May 2018. He also reported a history of alcohol abuse, which is supposedly in remission. Defendant previously received inpatient treatment at Greenbriar. (Docket No. 47-6).

Defendant previously was employed for Stephen Feldsott from 2008 to 2013 and with TMS International from August 2019 until March 2020, when he was laid off due to the COVID-19 pandemic. Defendant's work history is rather limited, but the Court notes that a letter submitted on his behalf indicates that "he may be able to return to his former job [with TMS]. We will attempt to work to make that happen. We can't guarantee it, but his work record makes that possible." (Docket No. 47-4 at 2). While Defendant's work record is commendable, and it is laudable that a supporter offered to help him try to secure employment, presently there is no information concerning a prospective job opportunity or what any proposed employment would entail. Such situation is potentially problematic given that Defendant was arrested on the pending charges in June 2020, which was after he was laid off from his job. (*Id.*). Accordingly, absent the prospect of available legitimate employment, the Court is concerned that Defendant could be lured into returning to the drug trafficking activity with which he has been charged.

Turning to Defendant's criminal history which began when he was 19 years old, as Judge Lenihan observed, "[his] past criminal history is a problem for [him]." (Docket No. 42 at 35). Notably, and highly relevant for present purposes, Defendant has three prior drug trafficking convictions for possession with intent to deliver a controlled substance. He was sentenced to 11 to 23 months' imprisonment for two of those convictions and to the Intermediate Punishment

Program (drug court) for 36 months for the most recent conviction in 2018.  He also has prior convictions for robbery-take property from other/force, and fleeing or attempting to elude an officer, for which he was sentenced to short periods of incarceration and probationary sentences. As Judge Lenihan also pointed out, Defendant has "seven times been charged with new offenses while on bail, bond or probation."  (*Id.* at 35-36).  Most recently, he was arrested on the pending charges for conduct which occurred in June 2020 while he was under the drug court sentence in the Court of Common Pleas of Allegheny County.  Overall, Defendant's past conduct demonstrates "a pattern of similar criminal activity as far as drug dealing" as Judge Lenihan noted, (*id.* at 36), and the prior sentences he received (incarceration, probation, Intermediate Punishment Program) did not deter him from engaging in additional criminal activity, nor did court-imposed conditions and supervision deter his illicit activity.  All told, Defendant's criminal history and conduct while under court supervision weigh very strongly against pretrial release.

In analyzing Defendant's history and characteristics, the Court is cognizant that it must consider all possible conditions of release, such as the ACTA program proposed by Defendant. As discussed, Defendant has a demonstrated history of engaging in criminal conduct while under court supervision, as well as failing to appear to court as evidenced by the issuance of two bench warrants for same in a prior case at CP 16668-2008.  In contrast to the past penalties he received for his criminal conduct, Defendant is now exposed to a significant term of incarceration if convicted – that is, a minimum term of five years' imprisonment at Count One and a consecutive five-year term of imprisonment at Count Two, which increases the incentive to flee.[8]  In light of

---

8       These are the minimum statutory penalties.  If it is determined that Defendant has a prior conviction for a serious drug felony or a serious violent felony, then the statutory term of imprisonment at Count One is not less than 10 years to life imprisonment.  21 U.S.C. § 841(b)(1)(B)(viii).  As to Count Three, if it is determined that Defendant has three previous convictions for a violent felony or a serious drug offense, or both, then the term of imprisonment is not less than 15 years to life imprisonment.  18 U.S.C. § 924(e)(1).

the nature of the charged drug trafficking and firearms offenses and the substantial penalties

Defendant faces if convicted, this Court is not persuaded that participation in the ACTA program,

nor electronic monitoring or other means of personal supervision, would assure his appearance as

required in this case.[9]  *See e.g., Chagra*, 850 F. Supp. at 359-60 (given, *inter alia*, that the defendant

faced minimum term of 20 years' imprisonment on drug conspiracy charge and the conspiracy

involved large sums of cash, the court was not satisfied that any possible conditions of release

would reasonably assure the defendant's appearance, as "[e]lectronic monitoring and other means

of personal supervision . . . only notify authorities that the defendant is already fleeing").

Overall, when considering Defendant's history and characteristics (most notably, his

extensive criminal history and rather limited employment), this factor weighs in favor of pretrial

detention.

### D.   Nature and Seriousness of Danger to Any Person or the Community if Released

The final factor requires consideration of the nature and seriousness of danger to any person

or the community if Defendant is released.  As to this factor, this Court has explained that:

> [it] agrees with others which have observed that drug trafficking poses a
> substantial risk of harm to the community, particularly the trafficking of
> significant quantities of a dangerous, addictive drug such as cocaine as
> alleged to have occurred here.  *See Bastianelli*, 2020 WL 1015269, at *8
> ("Drug trafficking certainly poses a substantial risk of harm to the
> community, particularly the trafficking of significant quantities of very
> dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp.
> 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the

---

[9]    It stands to reason that a defendant facing a substantial period of incarceration may have a heightened incentive to flee, which the Court cannot simply ignore.  *See United States v. Oliver*, Crim. No. 16-40, 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016) ("[T]he risk of Defendant's potential to flee from prosecution is heightened due to the substantial penalties he faces if convicted in this case. . . ."); *United States v. Ewell*, Crim. No. 13-125, 2013 WL 4479029, at *3 (W.D. Pa. Aug. 20, 2013) ("The potential for flight from prosecution is now greater as [the defendant] has been charged with such a serious offense and faces very severe penalties, if convicted."); *United States v. Johnson*, Crim. No. 20-272-2, 2020 WL 6321578, at *5 (E.D. Pa. Oct. 28, 2020) (observing that "[t]he length of the sentence for the offense is one consideration in assessing risk of flight"); *United States v. Miller*, Crim. No. 00-103-02, 2000 WL 633048, at *4 (E.D. Pa. May 9, 2000) (noting that "a serious potential penalty provides a strong incentive to flee").

community this court must consider. The court must also consider the danger of trafficking in illicit drugs.").  Distribution of Schedule II controlled substances like cocaine[10] have a "high potential for abuse" and that abuse "may lead to severe psychological or physical dependence." *See Bastianelli*, 2018 WL 1015269, at *8 (citing 21 U.S.C. § 812(b)(2)(A), (C)). Accordingly, the high volume of cocaine allegedly trafficked in this case presents a considerable danger to the safety of the community.

Ultimately, consideration of this factor requires a court to "*predict* whether defendant will engage in drug trafficking if released pending trial." *United States v. Bratcher*, Crim. No. 14-28, 2014 WL 1371582, at *8 (W.D. Pa. Apr. 8, 2014) (emphasis in original) (citing *Perry*, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior.").[11]   The Court recognizes, as others have, that strict conditions of release, including conditions such as home confinement and electronic monitoring, cannot guarantee that a defendant will no longer engage in criminal activity. *See e.g.*, *Bastianelli*, 2018 WL 1015269, at *8 (citing *United States v. Yarbough*, No. 2:14-cr-270-11, 2014 WL 7343839, *4 (W.D. Pa. Dec. 23, 2014) ("If released to home detention, nothing prevents Defendant from continuing to engage in illegal activity.").

*United States v. Araiza-Vega*, Crim. No. 20-218, 2020 WL 6546136, at *8 (W.D. Pa. Nov. 6, 2020).

These observations concerning the substantial risk of harm to the community posed by drug trafficking equally apply in Defendant's case both to the community at large and the community at ACTA, where other residents are trying to treat their substance abuse issues. Further, as Judge Lenihan observed, Defendant was found in a car with methamphetamine, a loaded firearm and a large amount of cash.  (Docket No. 42 at 35).  The Court cannot overlook the obvious danger to the community posed by the combination of drug trafficking and firearm

---

[10]   Here, Defendant is charged at Count One of the Indictment with possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine.  (Docket No. 3).  Like cocaine, methamphetamine is a Schedule II controlled substance. *See id.; see also* 21 U.S.C. § 812.

[11]   Given this case law explaining that the dangerousness determination involves a prediction of a defendant's likely future behavior, the Court is not persuaded by Defendant's reliance on statistics generally showing that "nearly everyone on pretrial release in the federal system appears in court and does not reoffend." (*See* Docket No. 47 at 21-23).  Such statistics are not necessarily relevant to the Court's consideration of this particular Defendant's specific situation and prediction of his likely future behavior. *See United States v. Murrietta*, Crim. No. 20-2018,  2020 WL 7643236, at *9, n.8 (W.D. Pa. Dec. 23, 2020).

possession as is alleged to have occurred in this case. *See Oliver*, 2016 WL 1746853, at *9 ("[T]he utilization of firearms in furtherance of drug trafficking poses a significant threat of violence."). Additionally, the Court observes that Defendant apparently was not deterred by the sentences he received for his past crimes and/or the conditions imposed upon him in his prior cases as evidenced by the fact that he continued to engage in illegal conduct and ultimately the serious criminal activity charged here, which suggests that he may be inclined to repeat his illicit activity if released. All told, based on the serious nature of the charges here, along with all of the other factors the Court has considered, the Court finds that the weight of the evidence is such that Defendant's release on bond would pose a serious risk of his continued criminal activities. As such, this final factor weighs in favor of pretrial detention.

In sum, after considering the record as a whole, including the nature and circumstances of the serious drug and firearms offenses charged, the weight of the evidence against Defendant, his history and characteristics, the nature and seriousness of danger to the community posed by Defendant's release, and the rebuttable presumption, which retains evidentiary weight, there is no condition or set of conditions which will reasonably assure the safety of the community if Defendant is released pending trial and that he will appear as required. Accordingly, detention must be ordered.

## IV.    <u>CONCLUSION</u>

Given the Court's finding that no condition or combination of conditions will reasonably assure Defendant's appearance as required and the safety of the community if he is released, the Court will lift its stay of the order of release entered by Judge Lenihan on October 20, 2021, grant

the Government's motion seeking revocation of the release order, revoke Defendant's bond and order that he shall be detained pending trial or other disposition of this matter.

An appropriate Order follows.

_s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge

Date: January 14, 2022

cc/ecf:  All counsel of record

United States Marshal